**SHARON STEEL CORPORATION,**
**Plaintiff,**

v.

**The UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 10430.**

United States District Court
W. D. Pennsylvania.

March 22, 1955.

415

Thomas J. McManus, A. S. Hollinger and Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

John W. McIlvaine, U. S. Atty., Pittsburgh, Pa., for defendant.

WILLSON, District Judge.

Plaintiff sued for the refund of federal taxes in the sum of $6,600, representing federal documentary stamp taxes paid by plaintiff.

On August 12, 1948, plaintiff borrowed $6,000,000 from the Metropolitan Life Insurance Company for use in its corporate business. This loan transaction was consummated pursuant to a loan agreement executed between plaintiff and Metropolitan on August 6, 1948, and was evidenced by a "note" executed and delivered to Metropolitan on August 12, 1948. A description of the form and substance of this note may be summarized as follows:

1. Both the note and loan agreement were printed on plain white paper and were executed by the president of Sharon Steel Corporation without the use of a corporate seal.

2. As a condition of this borrowing taxpayer undertook to observe the following covenants and restrictions:

(a) Promptly pay and discharge all state and federal tax charges.

(b) Conserve and keep in proper working condition all property necessary in the conduct of its business.

(c) Keep its properties adequately insured.

(d) Except under specified conditions, not to undertake any further corporate borrowing or otherwise dispose of its tangible or intangible assets.

(e) Not to pay any dividends to its stockholders unless certain "conditions shall be fulfilled."

3. The terms of the loan were from August 12, 1948 to August 1, 1967, a period of twenty years. The first payment was deferred until August 1, 1952, four years after the original loan. The schedule of repayment was set forth as follows (Ex. "B", par. 3(a)):

"3. (a) The Company covenants and agrees that on August 1 of each year, commencing August 1, 1952 and continuing to and including August 1, 1967, it will prepay an aggregate principal amount of the outstanding Notes as follows:

"$200,000 on August 1 of each of the years 1952 to 1956, both inclusive;

"$400,000 on August 1 of each of the years 1957 to 1966, both inclusive; and

"$500,000 on August 1, 1967."

Thus, 33⅓ per cent of the loan was to be repaid during the first ten years of the loan's duration and 66⅔ per cent of the loan was to be repaid in the last ten years.

4. Plaintiff also had the right, at its option, to prepay all or any part of the loan in multiples of $1,000, with, however, an added premium being charged. The amount of the premium varied in time, its range being 3½ per cent on prepayments made during the first year, to ⅛ per cent on prepayments made during the last year of the loan's duration.

5. The loan agreement indicated taxpayer's understanding that Metropolitan was acquiring "the Notes for (its) own account for investment and not with a view of sale, nor with any present intention of selling the Notes * * *" Metropolitan affirmed this understanding by its acceptance.

■ 26 U.S.C.A. §§ 1800–1801, being a portion of the Internal Revenue Code of 1939, as amended, imposes a tax upon all instruments known generally as corporate securities. Debentures are taxable. Treasury Regulations 71 (1941 ed.), promulgated under the Internal Revenue Code of 1939, Section 113.55, provides:

"Sec. 113.55. *Issues Subject to Tax.*—Ordinarily, a corporate instrument styled a bond, debenture, or certificate of indebtedness is subject to the tax. However, the taxability of an instrument is not determined by the name alone but depends upon all the circumstances, such as the name, form, and terms of the instrument, etc. Hence, an instrument, however designated, having all the essential characteristics of a bond, debenture, or certificate of indebtedness is taxable as such. Similarly * * *" etc.

■ Plaintiff contends that its borrowing is evidenced by what is, for the purposes of this discussion, a promissory note, and that the borrowing is not evidenced by a debenture and that the loan transaction is not typical of one customarily evidenced or secured by a debenture or a number of debentures. Plaintiff cites many decisions in support of its argument that the document is a promissory note. It is impossible to reconcile all of the decisions of the district courts and the courts of appeal. Two decisions in the Second Circuit, General Motors Acceptance Corporation v. Higgins, 161 F.2d 593, and Niles-Be-

ment-Pond Co. v. Fitzpatrick, 213 F.2d 305, the first of which was against the taxpayer and the second in favor of the taxpayer, pose the problems facing the trial court in attempting to decide the issue presented here. In the latter case, Judge Harlan discusses some five characteristics of the document in deciding that the obligation was nontaxable. A careful comparison of the characteristics mentioned in the General Motors case and in the Niles-Bement case with the instrument presented here leads to the conclusion that the document executed by plaintiff has the essential characteristics of a debenture, and is accordingly taxable as such. In comparing the characteristics of the instrument executed by plaintiff with those found in the General Motors case and in the Niles-Bement-Pond Co. case, it is noted:

■ 1. The note here is printed on plain white paper that is not tinted or engraved and does not bear the corporate seal, but is merely executed by the president of plaintiff. The loan agreement is printed on 8 pages of 8½ by 12¼ paper. The note and loan agreement together require some twenty-three pages of the same size printed matter. As Judge Harlan indicated, the appearance of the instrument, while not of great weight, is at least of more significance in establishing the true genus of the instrument than the mere description "promissory note" or "debenture."

■ 2. The restrictions placed on the activities of Sharon Steel Corporation to some extent point away from this loan being the usual sort of commercial loan transaction. Again, as Judge Harlan said, such a fact standing alone is not controlling as restrictions in a loan of this magnitude are not surprising and there is nothing in the Statutes or Legislative history establishing that the size of the transaction is determinative of its tax consequences. On the other hand, it is observed

that restrictions of the kind found in the present instrument were not usual in the ordinary commercial promissory note.

■ 3. In this case the term of the loan is twenty years. In Niles-Bement, the term was seven years and the G.M.A.C. loan was for five years. In this case no payment on principal is due during the first four years of the loan. One-third of the loan is to be repaid during the first ten years and two-thirds during the last ten years. From a maturity viewpoint it is indicated that the loan would be liquidated from a long term realizaticn or capital improvements rather than from normal operations of the borrower's business.

4. Here the borrower has the privilege of prepayment with approximately the same privileges set forth in the two cases cited. It is significant, however, that in the first paragraph, Sharon Steel Corporation promises to pay "Metropolitan Life Insurance Company, or order, on the first day of August, 1968, the principal amount of Six Million Dollars * * * and to pay interest * * *" Then it is provided:

"1. This Note is either in the original principal amount of $6,000,-000 or is one of a number of Notes * * * each in the principal amount of $1,000 or a multiple thereof, made by the Company in the aggregate principal amount of $6,000,000, all Notes maturing on August 1, 1968, and bearing interest payable at the same rate and on the same semi-annual dates * * *

"2. The holder of this Note at its option may in person or by duly authorized attorney surrender the same for exchange * * * and * * * receive in exchange therefor a Note or Notes, each in the principal amount of $1,000 or any multiple thereof * * *"

By the foregoing, marketability is assured to the lender. By the agree-

ment here, evidence of the borrowing is either one instrument for $6,000,000 or is one of a number of notes, i. e. possibly 6,000 notes of $1,000 each. Such a provision certainly is not characteristic of the usual promissory note.

█ 5. The General Motors case is authority for the proposition that only those instruments having the characteristics of an investment security fall within the terms of Section 1801. See Niles-Bement-Pond Co. v. Fitzpatrick, supra, 213 F.2d at page 311. The lender here is a life insurance company. Nothing is shown to indicate that the parties had ever before engaged in commercial loan transactions.

In this case I find the same general combination of factors as led the Court in General Motors Acceptance Corporation v. Higgins, supra, to hold the promissory notes there in question taxable as debentures. I, therefore, make the following

### Findings of Fact

1. Plaintiff is, and at all times hereinafter mentioned was, a corporation organized and existing under and by virtue of the laws of the Commonwealth of Pennsylvania.

2. Plaintiff and Metropolitan Life Insurance Company entered into a loan agreement on August 6, 1948, whereby Metropolitan loaned the plaintiff $6,000,-000 and which agreement provided that the loan was to be evidenced by note or notes. On August 12, 1948 plaintiff executed and delivered to Metropolitan the instrument in issue, printed on white paper, 17½ x 11 inches, containing four pages of printed material, wherein plaintiff promised to pay Metropolitan $6,-000,000 on the first day of August, 1968.

3. The note provided as follows:

"1. This Note is either in the original principal amount of $6,000,-000 or is one of a number of Notes (this Note or such Notes being hereinafter sometimes called the 'Notes'), each in the principal amount of $1,000 or a multiple thereof, made by the Company in the aggregate principal amount of $6,000,000, all Notes maturing on August 1, 1968, and bearing interest payable at the same rate and on the same semi-annual dates as the interest on the principal amount of this Note."

4. The note also provided:

"2. The holder of this Note at its option may in person or by duly authorized attorney surrender the same for exchange at the principal office of the Company in Sharon, Pennsylvania, and, within a reasonable time thereafter and without expense (other than transfer taxes, if any), receive in exchange therefor a Note or Notes, each in the principal amount of $1,000 or any multiple thereof dated as of the date to which interest has been paid on this Note, and payable to such person or persons, or order, all as may be designated by such holder, for the same aggregate principal amount as the then unpaid principal amount of this Note."

5. The note provided for prepayment as follows:

" * * * $200,000 on August 1 of each of the years 1952 to 1956, both inclusive;

"$400,000 on August 1 of each of the years 1957 to 1966, both inclusive; and

"$500,000 on August 1, 1967."

6. Plaintiff at its option had the privilege to call for prepayment and pay the note in its entirety or any portion thereof constituting $1,000 or any multiple thereof, together with interest accrued on the date fixed for prepayment, plus a premium on the principal being prepaid, determined as follows:

"3½% if prepaid on or before August 1, 1949

"3¼% if prepaid thereafter and on or before August 1, 1950

"3% if prepaid thereafter and on or before August 1, 1951 * * *"

With a decreasing 1/4% annually.

7. As a condition of this borrowing, taxpayer undertook to observe the following covenants and restrictions:

(a) Promptly pay and discharge all state and federal tax charges;

(b) Conserve and keep in proper working condition all property necessary in the conduct of its business;

(c) Keep its properties adequately insured;

(d) Except under specified conditions, not to undertake any further corporate borrowing, or otherwise dispose of its tangible or intangible assets;

(e) Not to pay any dividends to its stockholders unless certain "conditions shall be fulfilled;"

(f) Not to merge, consolidate or dispose of all or substantially all of its property; and

(g) Not to lend money or invest money in any other business, with certain stated exceptions.

8. The parties to this loan transaction had not previously engaged in a similar transaction though the money borrowed in this instance was for use by plaintiff in the ordinary course of its business.

9. On or about January, 1951, the Commissioner of Internal Revenue assessed against plaintiff a documentary stamp tax deficiency in the amount of $6,600 in respect of the promissory note described in paragraph 2. The action of the Commissioner of Internal Revenue in assessing said deficiency was based upon his determination that the said promissory note was within the class of corporate securities which are taxable under Section 1801 of the Internal Revenue Code.

10. On or about February 12, 1951, the Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania issued a notice and demand to plaintiff for the payment of the said deficiency of $6,600. In the said notice and demand it was stated that if the said deficiency was not paid within ten days from the date thereof, interest and penalties would be assessed thereon.

11. On or about February 19, 1951, plaintiff, in compliance with the demand made upon it by the Commissioner, and, in order to avoid interest and penalties, made payment under protest to the Collector of Internal Revenue for the Twenty-third Collection District of Pennsylvania, in the amount of $6,600.

12. On or about August 22, 1951, plaintiff filed with the Collector of Revenue for the Twenty-third Collection District of Pennsylvania, a claim for refund of $6,600.

### Conclusions of Law

1. The Court has jurisdiction over the parties to the action and the subject matter thereof.

2. The instrument delivered by the plaintiff, Sharon Steel Corporation, to Metropolitan Life Insurance Company on which stamp tax was assessed and paid was a debenture within the meaning of and subject to tax under Section 1801 of the Internal Revenue Code.

3. The stamp tax on the said instrument was legally assessed and collected by the defendant.

4. Defendant is entitled to judgment.